**VIRGIN WIRELESS, INC. and SD Telecommunications, Inc., Plaintiffs,**

v.

**VIRGIN ENTERPRISES LIMITED, Virgin Group Limited, Virgin Mobile USA, LLC, Virgin Mobile USA, Inc., Sprint Spectrum Holding Company, L.P., Sprint Spectrum, L.P., Sprint-com, Inc., Phillieco L.P. and Sprint Communications Company L.P., Defendants.**

No. Civ.A. 01–799–SLR.

United States District Court, D. Delaware.

April 26, 2002.

John W. Shaw, and Adam W. Poff, of
Young Conaway Stargatt & Taylor, LLP,
Wilmington, Delaware, for plaintiffs.

Mary B. Graham, of Morris, Nichols,
Arsht & Tunnell, Wilmington, Delaware,
for defendants.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

### I. INTRODUCTION

On December 3, 2001, plaintiffs Virgin Wireless, Inc. and SD Telecommunications, Inc. filed this action against defendants Virgin Enterprises Limited, Virgin Group Limited, Virgin Mobile USA, LLC, Virgin Mobile USA, Inc., Sprint Spectrum Holding Company, L.P., Sprint Spectrum, L.P., Sprintcom, Inc., Phillieco L.P. and Sprint Communications Company L.P.[1] (D.I.1) Plaintiffs are seeking a declaratory judgment that the use of their pending service marks does not infringe defendants' registered trademarks and service marks. Plaintiffs also allege that defendants have infringed plaintiffs' pending service marks by agreeing to form a joint venture to offer "pay-as-you-go wireless communication services and handsets" to United States markets using plaintiffs' pending service marks. (Id. at ¶ 25) Currently before the court is defendants' motion to dismiss or, in the alternative, to transfer the action to the Eastern District of New York.[2] (D.I.29) For the following reasons, defendants' motion to dismiss the action as to Virgin Group Limited is granted, and the remaining action shall be transferred to the Eastern District of New York.[3]

### II. BACKGROUND

#### A. The Parties

Plaintiffs are New York corporations, having their principal places of business in New York, New York. (Id. at ¶ 3) Plaintiffs are the beneficial parties in interest of the following United States Patent and Trademark service mark applications for telecommunications services: VIRGIN WIRELESS, Serial No. 75/845508; VIRGIN COMMUNICATIONS, Serial No. 75/845509; VIRGIN NET, Serial No. 75/845510; and VIRGIN MOBILE, Serial No. 75/845511. (Id. at ¶ 11)

Defendant Virgin Enterprises Limited ("VEL") is a corporation organized and existing under the laws of England and Wales, having its principal place of business in London, England. (D.I. 33 at ¶ 2) VEL is the registrant of several trademarks containing the word VIRGIN, including U.S. Registration Nos. 1039574, 1469618, 1517801, 1591952, 1597386, 1851817 and 1852776. VEL's marks are collectively registered for sound and music recordings; printed sheet music, books and other printed matter; clothing, hats and accessories; advertising services; transportation services for goods and passengers; and other retail and entertainment related services. (D.I. 1 at ¶¶ 14–15) VEL acts solely as a repository of trademark rights and goodwill arising from the operations of trading companies that offer VIRGIN-branded goods and services ("Virgin Group companies"). (D.I. 55 at ¶ 2)

Defendant Virgin Group Limited ("VGL") is also a corporation organized and existing under the laws of England and Wales, having its principal place of business in London, England. (D.I. 1 at

1. On October 23, 2001, plaintiffs filed a similar complaint against Virgin Enterprises Limited, Virgin Group Limited and Virgin Mobile USA in the United States District Court for the District of Arizona. (D.I.30, Ex. 1) That complaint was never served on the defendants and, subsequently, was dismissed.

2. The court permitted brief discovery limited to the jurisdictional issues raised by defendants. (D.I.28)

3. Because the court is transferring the remaining action to the Eastern District of New York, defendants' motion to dismiss the action as to Virgin Enterprises Limited for lack of personal jurisdiction is denied as moot.

¶ 5) VGL is an investment holding company with no tangible fixed assets. Its primary assets consist of shares in two other Virgin Group companies, one of which is incorporated in England and Wales, and the other of which is incorporated in Jersey. (D.I.46, Ex. 1) VGL and these Virgin Group companies have had no involvement in the formation or activities of Virgin Mobile USA, LLC. (*Id.;* D.I. 44, Ex. D)

Defendant Virgin Mobile USA, LLC ("Virgin Mobile USA") is a company organized and existing under the laws of the State of Delaware, having its principal place of business in San Francisco, California. (D.I. 1 at ¶ 6) Virgin Mobile USA is a joint venture owned by Sprint Ventures, Inc., a Kansas corporation and non-party to this litigation, and an indirect subsidiary of Virgin Group Investments Limited, a corporation organized and existing under the laws of the British Virgin Islands. (D.I. 33 at ¶ 5) To date, the activities of Virgin Mobile USA have been limited to capital-raising activities in New York City and other non-Delaware locations. Upon capitalization, the initial operations of Virgin Mobile USA will occur in the greater New York area and West Coast markets where VIRGIN MEGASTORE retail stores operate and VIRGIN airline flights arrive and depart daily. (D.I. 32 at ¶ 3)

Defendant Virgin Mobile USA, Inc. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in San Francisco, California. (D.I. 1 at ¶ 6) Virgin Mobile USA, Inc. was formed to develop a business plan for marketing VIRGIN-branded wireless services and handsets from VIRGIN MEGASTORE retail stores and other locations in the United States. Virgin Mobile USA, Inc. is not licensed to use the VIRGIN mark in association with any goods or services and has no plans to do so. (D.I. 32 at ¶ 5)

Defendants Sprint Spectrum Holding Company, L.P., Sprint Spectrum, L.P., Sprintcom, Inc., Phillieco L.P. and Sprint Communications Company L.P. (collectively, the "Sprint companies") do not claim any ownership or interest in the word VIRGIN as a trade name, trademark or service mark in any jurisdiction. None of the Sprint companies plans to advertise or sell goods and services using the VIRGIN name in any jurisdiction. (D.I.31)

## B. Facts

On October 4, 2001, VEL and Virgin Mobile USA entered into a trademark license agreement over some of VEL's registered marks. (D.I. 32 at ¶ 4) On October 5, 2001, a press release was posted on Virgin Mobile USA's website that announced the following:

Sprint and the Virgin Group today announced a joint venture to offer pay-as-you-go wireless communications services and handsets to the U.S. market under the Virgin Mobile brand using Sprint PCS' all-digital, all-PCS nationwide wireless network. The formation of Virgin Mobile USA through the joint venture creates a new national wireless service provider targeting the 15– to 30–year-old consumer market in the U.S. Virgin Mobile USA expects to launch its services in select markets and complete a nationwide rollout during the first half of 2002.

. . . . .

"Virgin's strategic venture with Sprint enables Virgin Mobile USA to be the first Mobile Virtual Network Operator (MVNO) in the U.S.," said Sir Richard Branson, chairman of the Virgin Group. "We are the fastest growing mobile phone business in the U.K., and we will leverage our strong brand recognition as well as our consumer-savvy marketing

machine to satisfy the needs of a U.S. market that demands customization."

. . . . .

Virgin Mobile USA's products and services will include long distance and nationwide coverage in addition to Virgin Xtras, a distinctive set of features that will provide access to additional services tailored for the U.S. consumers' fast-paced, entertainment-focused, music-centric lifestyle. Virgin Mobile USA products and services are expected to be distributed nationally through premier retailers that focus on servicing the under–30 consumer market.

(D.I.44, Ex. A)

On January 16, 2002, VEL filed an action in the United States District Court for the Eastern District of New York (*Virgin Enterprises Ltd. v. Nawab*, No. 02–0311 (the "New York action")) against plaintiffs and other New York-based individuals and corporations, alleging registered service mark infringement and related torts arising from the operation of retail stores in New York under the trade name VIRGIN WIRELESS. VEL also claims that plaintiffs violated the RICO statute by procuring the service marks at issue and prosecuting this litigation. (D.I.23, Ex. A) Merits discovery in the New York action has been stayed pending this court's determination of the pending motions. (D.I. 50, Ex. 7 at ¶ 4)

## III. DISCUSSION

### A. Personal Jurisdiction Over VGL

■ When a non-resident defendant challenges personal jurisdiction, the burden is on the plaintiff to show that the defendant has purposefully directed its activities toward the residents of the forum

state or otherwise "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). A plaintiff may not rely on the pleadings alone in order to withstand a motion to dismiss for lack of personal jurisdiction. *See Stranahan Gear Co., Inc. v. NL Indus., Inc.*, 800 F.2d 53, 58 (3d Cir.1986); *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n. 9 (3d Cir.1984). This being the case, the plaintiff must come forward with facts sufficient to establish by a preponderance of the evidence that the court can exercise personal jurisdiction over the defendant. *See Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 146 (3d Cir.1992).

■ In order for the court to assert personal jurisdiction over VGL, two requirements, one statutory and one constitutional, must be satisfied. First, a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state. *See* Fed. R.Civ.P. 4(e)(1). Thus, the court must determine whether there is a statutory basis for exercising jurisdiction over VGL under the Delaware long-arm statute, 10 Del.C. § 3104(c). Second, the court must determine whether an assertion of jurisdiction over VGL comports with constitutional notions of due process.[4] *See Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 293 (3d Cir.1985).

The Delaware long-arm statute provides that personal jurisdiction is proper over any nonresident who, in person or through an agent:

---

**4.** The court acknowledges that the Delaware Supreme Court has not collapsed the analysis under the Delaware long-arm statute into the constitutional due process analysis, as some courts have done.

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State.

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del.C. § 3104(c). The above provisions have been construed "liberally so as to provide jurisdiction to the maximum extent possible" in order "to provide residents a means of redress against those not subject to personal service within the State." *Boone v. Oy Partek Ab*, 724 A.2d 1150, 1156–57 (Del.Super.1997).

■ Plaintiffs contend that the court may assert jurisdiction over VGL pursuant to § 3104(c)(1) because VGL entered into a joint venture with the Sprint companies to create Virgin Mobile USA, a Delaware corporation. Plaintiffs base their arguments on a sole press release which they attribute to VGL. The court finds that plaintiffs'

arguments fail to justify submitting VGL to suit in this judicial district. The press release that is the foundation of plaintiffs' trademark infringement claim indicates that "Virgin Group," and not VGL, entered into the joint venture at issue. Furthermore, affidavits submitted by defendants confirm that VGL has no connection to the formation or intended capitalization of Virgin Mobile USA.[5] Defendants' motion to dismiss the action as to VGL for lack of personal jurisdiction is granted.

**B. Transfer of Venue**

Transfer of a civil action is governed by 28 U.S.C. § 1404(a) which provides that

[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The purpose of § 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (internal citations omitted). Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192, 208 (D.Del.1998). Because the court finds that the remaining action could have been brought in the Eastern District of New York,[6] the court must con-

---

**5.** Because plaintiffs' conspiracy and Rule 4(k)(2) theories of jurisdiction over VGL are also on the press release, the court finds those arguments to be unpersuasive.

**6.** The United States District Court for the Eastern District of New York possesses subject-matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C.

sider the relevant factors to determine if a transfer is warranted.

The United States Court of Appeals for the Third Circuit has indicated that the analysis regarding transfer is very broad. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995). Although emphasizing that "there is no definitive formula or list of factors to consider," the Third Circuit identified several private and public interests for review. *Id.* The private interests include: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial conditions; (5) the convenience of the witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum; and (6) the location of books and records to the extent that they could not be produced in a certain forum. *See id.* at 883 (citations omitted). The public interests include: (1) the enforceability of the judgment; (2) practical considerations regarding the ease, speed or expense of trial; (3) the administrative difficulty resulting from court congestion; (4) the local interest in deciding local controversies in the home forum; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *See id.* (citations omitted).

When determining whether or not transfer is warranted in the circumstances presented, district courts must balance all of the relevant factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. *See id.* The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. *See Continental Cas. Co. v. Am. Home Assurance Co.*, 61 F.Supp.2d 128, 131 (D.Del.1999).

In the case at bar, plaintiffs' preference for Delaware is not given as much deference because they have not chosen their "home turf." *See id.* at 131 (stating that "the transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred"). In fact, defendants argue for transfer to plaintiffs' "home turf," as plaintiffs are incorporated and maintain their principal places of business in New York. Thus, it appears that the convenience of the parties and potential witnesses would support transferring the action to New York. Furthermore, the center of operative facts in the action favors transfer to New York. The declaratory judgment claim arose out of plaintiffs' use of the VIRGIN WIRELESS name by retail stores located in New York. The trademark infringement claim is based on the launch of a nationwide joint venture with no particular contacts to the chosen forum other than the incorporation of Virgin Mobile USA in Delaware. Indeed, the evidence indicates that the primary fundraising activities for capitalization of Virgin Mobile USA are occurring in New York and other non-Delaware locations.

§§ 2201, 2202. VEL, VGL, Virgin Mobile USA and Virgin Mobile USA, Inc. have consented to suit in New York (D.I.44, Exs.D, S), and the Sprint companies conduct national operations with sufficient connections to New York so as to submit to jurisdiction there.

Venue is also proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because "a substantial part of the events or omissions giving rise to the claim[s]" occurred in that district.

Even more compelling is the existence of the New York action, which is predicated on the same transactions and occurrences at issue in this litigation, and involves many of the same parties. Plaintiffs argue that the first-filed rule supports transfer of the New York action to Delaware rather than the opposite. *See E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 979 (3d Cir.1988) (stating that invocation of the first-filed rule is "the norm, not the exception"). However, the court notes that the first-filed rule "is not a rigid or inflexible rule to be mechanically applied." *Id.* at 976 (citations omitted).

> Bad faith and forum shopping have always been regarded as proper bases for departing from the rule. Similarly, courts have rejected the rule when the second-filed action had developed further than the initial suit, and when the first-filing party instituted suit in one forum in anticipation of the opposing party's imminent suit in another, less favorable, forum. The letter and spirit of the first-filed rule, therefore, are grounded on equitable principles. To be sure, the rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments. Yet, fundamental fairness dictates the need for "fashioning a flexible response to the issue of concurrent jurisdiction."

*Id.* at 976–77 (internal citations omitted). Under this standard, a court must act "with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." *Id.* at 977 (citations omitted).

In the case at bar, the court finds that considerations of judicial economy are especially persuasive in supporting transfer of this action to New York. It would be a waste of judicial resources to allow both suits to progress in parallel. Thus, practical considerations of efficiency as well as private interests of the parties favor a transfer of this action to the Eastern District of New York.

## IV. CONCLUSION

For the reasons stated, the action is dismissed as to VGL for lack of personal jurisdiction, and the remaining action shall be transferred to the Eastern District of New York. An appropriate order shall issue.

## ORDER

At Wilmington this 26th day of April, 2002, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that:

1. Defendants' motion to dismiss the action as to Virgin Group Limited (D.I.29–1) is granted, and defendants' motion to dismiss the action as to Virgin Enterprises Limited (D.I.29–1) is denied as moot.

2. Defendants' motion to transfer the remaining action to the Eastern District of New York (D.I.29–2) is granted.

3. Plaintiffs' motion for expedited discovery and an early trial date or preliminary injunction hearing (D.I.12) is denied as moot.