**BELL HELICOPTER TEXTRON, INC., Plaintiff,**

**v.**

**C & C HELICOPTER SALES, INC. and Tom Cannon & Associates Ltd., Defendants.**

**No. CIV.A.01–408–JJF.**

United States District Court, D. Delaware.

Sept. 30, 2002.

Carolyn S. Hake, Esquire of Ashby & Geddes, Wilmington, DE, for Plaintiff.

Donald F. Parsons, Jr., Esquire of Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Defendants.

## MEMORANDUM OPINION

FARNAN, District Judge.

Presently before the Court is Defendant Tom Cannon & Associates LTD.'s ("Cannon") Motion to Dismiss for Lack of In Personam Jurisdiction and Defendants' Motion to Dismiss Due to Forum Non Conveniens (D.I.32). For the reasons discussed, the motion will be granted.

## PROCEDURAL HISTORY

Plaintiff, Bell Helicopter Textron, Inc. ("Bell") filed this action for trademark infringement and related causes of action in the United States arising from the sale of a helicopter created from the wreckage of a Bell Model 206B helicopter that was destroyed in a crash in Texas in May 1986. (D.I. 42 at 1). This case was originally filed in Texas, however, Defendants moved to dismiss for lack of in personam jurisdiction and forum non conveniens, indicating therein that Delaware would be a more convenient forum. (D.I. 42 at 2). The case was dismissed in Texas and Plaintiff re-filed in Delaware. (D.I. 42 at 1). Thereafter, Defendants filed the instant motion to dismiss for lack of in personam jurisdiction and forum non conveniens. (D.I. 42 at 1).

## STATEMENT OF FACTS

Plaintiff Bell is a manufacturer of commercial and military helicopters. (D.I. 42 at 4). Bell is a Delaware corporation with its principal place of business in Texas. (D.I. 34 at 1). Defendants Cannon and C & C Helicopter Sales, Inc. ("C & C") are engaged in the business of repairing and rebuilding damaged helicopters. (D.I. 30 at 1). Defendant Cannon is a Canadian corporation with its principal place of business in Ontario, Canada. (D.I. 34 at 1). Defendant C & C is a Delaware corporation with its principal place of business in Delaware. (D.I. 34 at 1).

On or about August 24, 1979, Bell manufactured a Model 206B–III helicopter Serial No. 2800 ("the helicopter"). (D.I. 42 at 4). In May 1986, the helicopter crashed near Pine Springs, Texas, in Culberson County. (D.I. 42 at 4). The helicopter was purchased by C & C in Ellis County, Texas, following its crash. (D.I. 34 at 2). The helicopter was shipped to Canada, repaired and returned to service there by USCAN Aviation Sales, Inc. ("USCAN"). (D.I. 34 at 2). The majority of the components used in repairing the helicopter were purchased in Canada. (D.I. 34 at 3). The helicopter was then sold to a Portuguese company, in a transaction taking place outside the United States. (Portuguese 34 at 3).

Bell seeks injunctive relief and damages for alleged violations of its trademark rights. (D.I. 34 at 2). In particular, Bell asserts that Cannon and C & C purchased the wreckage of a Bell helicopter that crashed in Texas. (D.I. 34 at 2). Bell claims that Cannon and C & C later improperly mixed and matched components while repairing the aircraft, using parts that were not intended for that particular model. (D.I. 34 at 2). Plaintiff further alleges that the defendants "falsely represented" that the helicopter was built and manufactured by Bell when later selling it to a Portuguese company, thereby harming Bell. (D.I. 34 at 2). Cannon and C & C deny these allegations. (D.I. 34 at 2).

## DISCUSSION

### I.  Motion to Dismiss for Lack of Personal Jurisdiction

#### A.  Standard of Review

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, in order for personal jurisdiction to exist over a defendant, two requirements, one statutory and one constitutional, must be satisfied. First, a

federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state. Fed. R.Civ.P. 4(e). Thus, the Court must determine whether there is a statutory basis for finding jurisdiction under the Delaware long-arm statute. *See* Del.Code Ann. tit. 10 § 3104(c). Second, because the exercise of jurisdiction must also comport with the Due Process Clause of the United States Constitution, the Court must determine if an exercise of jurisdiction violates Cannon's constitutional right to due process. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction. *Provident National Bank v. California Federal Savings & Loan Assoc.,* 819 F.2d 434, 437 (3d Cir.1987). To satisfy this burden, the plaintiff must establish either specific jurisdiction or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's activities within the forum state; general jurisdiction arises when the defendant has continuous and systematic contacts with the state, irrespective of whether the defendant's connections are related to the particular cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

**B.  Delaware Long Arm Statute**

■ The Delaware long-arm statute provides, in pertinent part:

(c) As to a cause of action brought by any person arising from any of the acts enumerated in the section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties provide otherwise in writing.

Del.Code Ann. tit. 10 § 3104(c).

In support of its motion, Cannon contends that Bell has failed to allege facts that would place Cannon within any of the six enumerated categories in the language of the Delaware long-arm statute. (D.I. 34 at 6). First, Cannon contends that it does not transact any business or perform any work or service in Delaware under § 3104(c)(1). Second, Cannon contends that it has not contracted to supply any services or things in Delaware under § 3104(c)(2). (D.I. 34 at 6–7). Third, Cannon contends that it was not present in Delaware when the act or omission was committed, nor does it have any offices in Delaware; and none of its agents, officers, directors, or representatives have ever transacted business in Delaware as required under § 3104(c)(3). (D.I. 34 at 8).

Fourth, Cannon contends that Bell has alleged tortious conduct performed outside Delaware under § 3104(c)(4), but has failed to allege that the effects of the conduct were felt within the forum. (D.I. 34 at 8). Cannon further contends that it does not do business or solicit business in Delaware. (D.I. 34 at 7). Fifth, Cannon contends that it has never had an interest in, used, leased or owned any real property in Delaware under § 3104(c)(5). (D.I. 34 at 8). Lastly, under § 3104(c)(6), Cannon contends that it has never contracted to insure or act as surety in any capacity within Delaware. (D.I. 34 at 7).

In opposition, Bell contends that Delaware's long-arm statute confers jurisdiction in this case.[1] Specifically, under § 3104(c)(1), Bell contends that Cannon continues to use C & C to hold title for all its U.S. FAA inspected helicopters, thereby enabling Cannon to transact business in the United States, namely Delaware. (D.I. 42 at 13). Bell reaches this conclusion by contending that this transaction, and those involving all other helicopters handled through C & C, were handled through the personal bank accounts of Cannon and/or C. Thomas Cannon ("Thomas Cannon"), its principal. (D.I. 42 at 11). Additionally, Bell contends that Cannon causes tortious injury in the State or outside of the State by its acts of trademark infringement outside the State because Cannon uses C & C for each and every transaction in the United States to engage in a persistent course of conduct and derives all of the revenue from the services of C & C in the State of Delaware under § 3104(c)(4). (D.I. 42 at 11–12).

In reply to Bell's Answering Brief, Cannon contends that the facts in evidence in this case contradict Bell's assertion. (D.I. 44 at 4). Specifically, Cannon contends

that Bell fails to cite any testimony of Thomas Cannon that supports the allegation that, under § 3104(c)(1), the transactions involving all other helicopters handled through C & C were handled through the personal bank accounts of Cannon and/or Thomas Cannon. (D.I. 44 at 3–4). Cannon further contends that C & C has derived no revenue whatsoever from services or any other activity in the State of Delaware under § 3104(c)(4). (D.I. 44 at 4).

The Delaware Supreme Court has construed the long-arm statute liberally to confer jurisdiction to the maximum extent possible in order "to provide residents a means of redress against those not subject to personal service within the State." *Virgin Wireless, Inc. v. Virgin Enterprises Limited,* 201 F.Supp.2d 294, 299 (D.Del. 2002) (quoting *Boone v. Oy Partek Ab,* 724 A.2d 1150, 1156–1157 (Del.Super.Ct.1997)). As previously stated, in relevant part the Delaware long-arm statute provides:

(c) As to a cause of action brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:

. . .

(1) Transacts any business or performs any character of work or service in the State; . . .

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substan-

---

1. Bell's answering brief only addresses § 3104(c)(1) and (c)(4) as applying to the facts of this case; therefore, the Court will solely

discuss these enumerated categories of the long-arm statute in its analysis.

tial revenue from services, or things used or consumed in the State; ... Del.Code Ann. tit. 10 § 3104(c)(4).

The Delaware Supreme Court has interpreted § 3104(c)(1) to be a specific jurisdiction provision of the long-arm statute, which requires that there be a "nexus" between the plaintiff's cause of action and the conduct of the defendant that is used as a basis for jurisdiction. *Helicopteros*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404. In order to meet the requirements of § 3104(c)(1), the act must be directed at residents of Delaware and protections of Delaware laws. *Thorn EMI N. Am., Inc. v. Micron Tech., Inc.,* 821 F.Supp. 272, 276 (D.Del.1993). Cannon, by itself, has not met this requirement because it has not transacted any business in Delaware whatsoever. All of its business takes place out of Canada since it is a Canadian corporation. Finding that the requirements of § 3104(c)(1) are not met, the Court cannot exercise specific jurisdiction over Cannon.

■ On the other hand, § 3104(c)(4) has been interpreted by the Delaware Supreme Court as a general jurisdiction provision, allowing for jurisdiction when the defendant's contacts with the forum state are unrelated to the cause of action.

Initially, the Court must determine if the alleged trademark infringement is a tortious injury for the purposes of jurisdiction. In *Magid v. Marcal Paper Mills, Inc.,* the court defined a tortious act under § 3104(c) as an act "which involves a breach of duty to another and makes the one committing the act liable in damages." 517 F.Supp. 1125, 1130 (D.Del.1981). Unlike § 3104(c)(1), there is no requirement under subsection (c)(4) that there be a nexus between the tortious injury and the actions upon which jurisdiction is based. *United States v. Consolidated Rail Corp.,* 674 F.Supp. 138 (D.Del.1987). Applying Delaware law, the Court finds that the alleged trademark infringement by Cannon constitutes a breach of duty owed to Bell. Thus, the first part of subsection (c)(4) is met.

Secondly, the Court must determine if Cannon regularly does or solicits business in Delaware. The Court concludes that Cannon does not regularly do business in Delaware. Cannon has no employees, local telephone listing, bank accounts, or real estate in Delaware. Anything or anyone involved in Cannon's business is located in Canada. The Court further concludes that Cannon does not solicit business in Delaware. Cannon does not advertise in Delaware, nor has it ever held any accounts with customers in Delaware. Thus, the Court concludes that Cannon's conduct does not amount to regularly doing business or soliciting business in Delaware.

Finally, the Court must determine if Cannon derives substantial revenue from services or things used or consumed in Delaware. In interpreting substantial revenue, Delaware courts have determined that two to three percent of total revenue is sufficient to confer jurisdiction. *See United States v. Consolidated Rail Corp.,* 674 F.Supp. 138, 144 n. 4 (D.Del.1987). Although Delaware courts have broadly construed the term "substantial revenue," the Court concludes that Cannon's revenues fall below the level required to exercise general jurisdiction. *Id.* Currently, Cannon's Delaware revenue, comprising less than 1% of total revenue, is not substantial enough to warrant an exercise of general jurisdiction.

In sum, the Court concludes that the requirements for jurisdiction under § 3104(c)(1) and (c)(4) of the Delaware long-arm statute have not been satisfied. Cannon, by itself, has not transacted any business in Delaware, nor has it ever engaged in regular business or solicited business in Delaware. Its revenues derived

from Delaware are not substantial. Although the Court finds that the alleged trademark infringement constitutes a tortious injury, it is not sufficient enough to satisfy the requirement under the Delaware long-arm statute.

## C. Due Process

■ In the instant case, Cannon contends that specific jurisdiction does not exist because Cannon has not purposefully directed any action towards Delaware. (D.I. 34 at 10). Specifically, Cannon contends that neither it, nor its agents in their representative capacity, have ever transacted any business in Delaware or directed any acts towards Delaware. (D.I. 34 at 10). Cannon further contends that it could not have reasonably foreseen being haled into a Delaware court. (D.I. 34 at 10). Cannon also contends that Bell makes no allegation that Cannon has any offices, is incorporated in or has done any business or other conduct in or related to Delaware. (D.I. 34 at 11). Finally, Cannon contends that it has not had or maintained any contacts with the forum whatsoever, let alone continuous and substantial contacts. (D.I. 34 at 11).

In opposition, Bell contends that Cannon's contacts with C & C in Delaware were direct, deliberate, purposeful, and extensive. (D.I. 42 at 12). Specifically, Bell contends that Cannon reached into the State of Delaware with the purpose of obtaining U.S. FAA inspection of its helicopter. (D.I. 42 at 12). Bell further contends that all of C & C's helicopter transactions in the United States, including the specific case at bar, were at all times conducted and orchestrated by Cannon in the State of Delaware through C & C. (D.I. 42 at 12). Finally, Bell contends that not only the quantity, but more importantly, the quality of Cannon's contacts with Delaware have been extensive and necessary to carry on its brokerage business with a

helicopter from the United States for sales overseas. (D.I. 42 at 12).

In reply, Cannon reiterates the contentions made in its opening brief. Cannon contends that although C & C is subject to general jurisdiction in Delaware, C & C has maintained no contacts which are specific to this cause of action, other than its Delaware incorporation. (D.I. 44 at 4). Finally, Cannon contends that C & C's offices and principal place of business are located in Ontario, Canada. (D.I. 44 at 4–5).

Due process requires that a defendant have certain minimum contacts with the forum state in order to ensure that the maintenance of the lawsuit does not offend "traditional notions of fair play and substantial justice." *Id.* at 316. The United States Supreme Court has held that to maintain general jurisdiction over a foreign defendant, the facts must establish "continuous and systematic general business contacts" with the forum state. *Helicopteros,* 466 U.S. at 416, 104 S.Ct. 1868 (1984). Furthermore, the Court of Appeals for the Third Circuit has held that a plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction. *Provident,* 819 F.2d at 437 (3d Cir.1987).

After considering the contacts Cannon has with Delaware, the Court concludes that the requirements of due process are not satisfied because Cannon's business contacts with Delaware and its residents are not continuous and systematic. Cannon has not availed itself of Delaware resources in that Cannon has no employees, bank accounts, or real estate in Delaware. In light of Cannon's insignificant contacts with Delaware, the Court further concludes that Delaware has no interest in adjudicating this case. This case does not involve Delaware related claims or Delaware plaintiffs.

## D. Alter Ego Theory

In Bell's Answering Brief, it contends that Thomas Cannon used and continues to use Cannon and C & C as facades for his personal benefit. (D.I. 42 at 14). Bell further contends that both Cannon and C & C, through its sole dominant shareholder, officer, and director, Thomas Cannon, have failed to operate under any corporate formalities, such as: board meetings, minutes, phone calls, sales receipts, or financial transactions. (D.I. 42 at 15). Bell contends that no monies relating to any of C & C's transactions have ever been handled through the bank account of C & C, but instead, those of Cannon and Thomas Cannon. (D.I. 42 at 15). Additionally, Bell contends that Cannon was the recipient of all the money produced as a result of C & C's incorporation in Delaware, which was paid directly by wire transfer into Thomas Cannon's personal bank account. (D.I. 42 AT 16). Using the case of *Haisfield v. Cruver*, C.A. No. 16570, 2000 WL 1091480, Steele, V.C. (Del. Ch. July 25, 2000), Bell further contends that since jurisdiction was found where a stockholder used all or substantially all of the resources for the funding and development of another transaction, this same rule should apply to the case at hand. (D.I. 42 at 14). Finally, Bell contends that the holding of *Oliver v. Boston University*, C.A. No. 16570, 2000 WL 1091480 (Del. Ch. July 25, 2000), should apply to the instant case, where in personam jurisdiction was found over a non-Delaware subsidiary created solely to complete the transaction at issue. (D.I. 42 at 14).

In reply, Cannon contends that Bell's alter ego theory must fail because Bell cannot meet the requirement that there be a parent and subsidiary relationship between the parties. (D.I. 44 at 10). Specif-ically, Cannon contends that it is not the parent or dominant shareholder of C & C, nor does it own a single share of stock in C & C. (D.I. 44 at 10).[2] Cannon further contends that Bell's analysis of *Oliver* is flawed for two reasons. (D.I. 44 at 10). First, Cannon contends that assuming a broad reading is adopted and Cannon could be a dominant corporation to C & C, Bell's analysis is backwards because *Oliver* exercised jurisdiction over the subsidiary based on its jurisdiction over the parent corporation. (D.I. 44 at 10). Second, Cannon contends that the court in *Oliver* exercised specific jurisdiction (as opposed to general jurisdiction) based on the significant amount of Delaware contacts of the out-of-state subsidiary, not the alter ego theory. (D.I. 44 at 11). Additionally, Cannon contends that *Haisfield* is distinguishable from the case at hand because it involved a parent-subsidiary and shareholder-corporation relationship, therefore, the alter ego theory applied. (D.I. 44 at 11). Finally, Cannon contends that if C & C could possibly be the alter ego of Cannon, it occurred in Canada, not in Delaware. (D.I. 44 at 11–12).

■ Delaware law provides two theories under which a court may establish jurisdiction over a subsidiary, which are the alter ego theory and the agency theory. *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F.Supp. 1458, 1463 (D.Del.1991). Under the alter ego theory of jurisdiction, corporate entities as between parent and subsidiary may be disregarded and the ultimate party in interest, the parent, be regarded in law and fact as the sole party in a particular transaction. *Pauley Petroleum, Inc. v. Continental Oil Co.*, 239 A.2d 629, 633 (Del.1968). This, however, may be done "only in the interest of justice,

---

**2.** Cannon does not go on to respond to Bell's contentions about corporate formalities or the corporation's monies.

when such matters as fraud, contravention of law or contract, public wrong, or where equitable consideration among members of the corporation require it, are involved." *Id.*

■ Applying the law to the facts of the instant case, the Court concludes that the alter ego theory of jurisdiction does not apply. Bell has failed to establish that C & C is the "alter ego" of Cannon because Thomas Cannon has kept the corporate entities separate. For instance, both parties contend that Thomas Cannon's personal bank account was used in the transaction involving the helicopter in the instant case. In his deposition testimony, Thomas Cannon stated that he is the one who paid the fees to the finance company, located in St. Louis, Missouri, for the purchase of the Bell Serial Number 2800 helicopter. This helicopter was then sold to the Portuguese company, who put money in escrow in Oklahoma. The money in Oklahoma was paid out by the finance company to USCAN progressively, on behalf of C & C. Once the aircraft was sold, the bulk of the money went to the finance company. What was left over, if any, was put into Thomas Cannon's personal account by wire transfer. With regard to the corporate formalities, Thomas Cannon testified at his deposition hearing that all the documents were destroyed in a fire at his office building in Canada. Therefore, the Court will not make a ruling based on that evidence.

The Court disagrees with Bell's contention that C & C served as a facade for Thomas Cannon and his Canadian corporation, Cannon. The Court does, however, agree with Cannon that the two cases relied on by Bell are distinguishable from the instant case. First, *Oliver* involved a subsidiary incorporated for the sole purpose of completing the transaction at issue in the case. C & C, on the other hand, was not incorporated solely for the purpose of the transaction involving the Bell Serial Number 2800 helicopter; rather, it was set up to purchase helicopters in general. Likewise, the court in *Oliver* exercised specific jurisdiction rather than general jurisdiction over the defendant, which this Court previously concluded does not pertain to the facts of this case. Second, the facts of *Haisfield* also differ from the facts of this case. The money used to incorporate and fund C & C came from Thomas Cannon's personal bank account; not Cannon's bank account. Therefore, Cannon's resources were not hindered in the process of creating C & C.

### E. Agency Doctrine

■ In addition to the alter ego doctrine, Bell contends that the facts in this case militate in favor of a finding of jurisdiction over Cannon because there is a complete overlap of the sole majority shareholder, director and officer of Cannon and C & C, namely, Thomas Cannon. (D.I. 42 at 17). Specifically, Bell contends that it was Thomas Cannon of Cannon who took care of all of the arrangements in purchasing the helicopter and delivering it to USCAN in Canada. (D.I. 42 at 17–18). Bell further contends that Cannon incorporated C & C for the purpose of obtaining U.S. FAA inspection. (D.I. 42 at 18). Additionally, Bell contends that the management and day-to-day operations of C & C were at all times those of Cannon. (D.I. 42 at 18).

In reply to Bell's arguments, Cannon contends that Bell goes to great lengths to show that Cannon is the principal of C & C, but fails to refer to any specific jurisdictional acts of C & C attributable to Cannon which satisfy the Delaware long-arm statute. (D.I. 40 at 7).

Under Delaware law, the agency theory examines the degree of control which the parent exercises over the subsidiary. *Ap-*

*plied Biosystems,* 772 F.Supp. at 1463. The factors relevant to this determination include the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business. *Id.* If an agency relationship is found to exist, courts will not ignore the separate corporate identities of parent and subsidiary, but will instead consider the parent corporation responsible for specific jurisdictional acts of the subsidiary. *Id.*

After considering the facts of the instant case, the Court agrees with Bell that C & C acts as the agent of Cannon. There is obviously an overlap of officers between Cannon and C & C, in that, Thomas Cannon is the sole majority shareholder, director and officer of both corporations. He manages the day-to-day operations of both business, and each corporation works together to obtain business. However, an agency relationship with a Delaware corporation alone is not sufficient to exercise jurisdiction, thereby making it unnecessary to meet the requirements of the Delaware long-arm statute. *Id.* at 1464. Instead, the result of such a finding of an agency relationship is that the Court may attribute certain acts by C & C to Cannon in assessing whether the terms of the Delaware long-arm statute have been met. *Id.* As stated above, the requirements of the Delaware long-arm statute have not been satisfied by Bell, therefore, the agency theory, by itself, does not confer jurisdiction.

## F.  Effects Doctrine

█   In its opening brief, Cannon contends that Bell's reliance on the effects doctrine of *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), would be mistaken. (D.I. 34 at 10). Cannon further contends that the instant case can be distinguished from *Calder,* where a Florida reporter could have reasonably foreseen litigation in California since his "intentional and allegedly tortious actions were expressly aimed at California." (D.I. 34 at 10). Specifically, Cannon contends that Bell's claims "do not involve either a level of intent, or degree of purposeful direction toward the forum state" in order to exercise jurisdiction. (D.I. 34 at 11).

In response to Cannon's opening brief, Bell contends that the acts of infringement by Cannon and C & C would have the most significant impact on Bell only in the United States, where Bell has its principal place of business. (D.I. 42 at 24). Cannon further contends that Cannon chose Delaware as the location for C & C to obtain access to the U.S. FAA. (D.I. 42 at 24). Additionally, Bell contends that Cannon could have reasonably expected to be haled into court in Delaware because Cannon engaged, and continues to engage, in interstate and foreign commerce. (D.I. 42 at 24). Finally, Bell contends that the effects of the trademark infringement are felt only in the United States, which were caused by Cannon and C & C through the State of Delaware. (D.I. 42 at 25).

In reply, Cannon contends that Bell is arguing that the United States as a whole is its principal place of business, instead of Texas. (D.I. 44 at 12). Cannon argues that there is no support for Bell's contention that Cannon and/or C & C is subject to jurisdiction in any state located in the United States since Bell's principal place of business is in Texas. (D.I. 44 at 13). Lastly, Cannon contends that the effects doctrine is not applicable in Delaware because the only contact involved here is the incorporation of C & C. (D.I. 44 at 13).

In order for there to be personal jurisdiction in the forum state over a defendant, the defendant must reasonably anticipate being haled into Court there due to the "allegedly tortious, actions" expressly aimed at the forum state. *Calder v. Jones,*

465 U.S. 783, 787–790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). Thus, the heart of the holding in *Calder* was that any tortious conduct intentionally directed at a party confers personal jurisdiction over the tortfeasor in the district where the victim resides. *Id.* at 790, 104 S.Ct. 1482. In addition, personal jurisdiction is appropriate where the "brunt" of the injury would be felt. *Id.*

Applying the *Calder* rule to the facts of this case, the Court concludes that personal jurisdiction is not proper in Delaware. Although C & C is incorporated in Delaware, only 1% of its business transactions are conducted in the United States; none of which has occurred in Delaware. The alleged trademark infringement by the defendants in this case was not intentionally aimed at the forum state, Delaware. As a matter of fact, the only act the defendants had in Delaware was C & C's incorporation. Neither the crash of the helicopter, nor the harm suffered by Bell occurred in Delaware. The Court also disagrees with Bell's attempt to use the United States as a whole as its principal place of business. Since this case has already been dismissed from the state of Texas by the Northern District of Texas, there is no other state in the United States that may confer personal jurisdiction over the parties.

## II. Motion to Dismiss Due to Forum Non Conveniens

In the alternative, Cannon and C & C contend that even if this Court determines that it possesses personal jurisdiction over Cannon, there should still be a dismissal of this action under the doctrine of forum non conveniens. (D.I. 34 at 1). Specifically, Cannon and C & C contend that Canada is the appropriate alternative forum because all of the acts giving rise to Bell's claims occurred there. (D.I. 34 at 13). Additionally, Cannon and C & C contend that all of their sources of proof, along with their president and employees, are located in Canada; Bell also does business in Canada. (D.I. 34 at 13). Cannon and C & C further contend that factors of private interest favor a dismissal from this Court, including: USCAN's and Cannon's employees' testimony; the inconvenience and expense of international travel of the Canadian witnesses; and viewing the premises of USCAN and/or Cannon, which can only be done in Canada. (D.I. 34 at 14). Finally, Cannon and C & C contend that public interest factors also play a part in the dismissal of this action from this Court, such as: conflicts of law that will arise, requiring this Court to apply foreign law; the burden of jury duty imposed upon people in the community having no relation to the litigation; and the local interest in the resolution of the matters at issue by the Canadian community. (D.I. 34 at 14).

In response, Bell contends that the harm to its goodwill and reputation of the trademark infringement in this case occurred in the United States, therefore, the United States Trademark Law is applicable. (D.I. 42 at 30). Bell further contends that C & C and Bell are both Delaware corporations, so Canada cannot be the proper forum. (D.I. 42 at 30). Specifically, Bell contends that the defendants' previous motion to transfer to Delaware implies an acknowledgment that a foreign forum is not necessary. (D.I. 42 at 30). Bell also contends that the private interest factors do not favor a dismissal in the instant case because defendants have shifted the inconvenience and costs solely to Bell, and failed to identify the potential witnesses and indicate what their testimony will be. (D.I. 42 at 31–33). Finally, Bell contends that the public interest factors militate against dismissal from this Court due to the local interest by Delaware in having this controversy decided at home, along with the fact that a Canadian court will have to inter-

pret and employ United States Trademark Law. (D.I. 42 at 34).

In reply, Cannon and C & C reiterate the arguments made in the opening brief, but add the contention that there are no witnesses in the state of Delaware whose testimony is required in this case. (D.I. 44 at 14). Lastly, Cannon and C & C contend that Delaware is not Bell's principal place of business, which distinguishes Bell from the cases it relies on. (D.I. 44 at 14).

A court may dismiss a case based on the doctrine of forum non conveniens "when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience," or when the "chosen forum [is] appropriate because of considerations affecting the court's own administrative and legal problems." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947)). Ordinarily, dismissal will be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice. *Id.* at 249, 102 S.Ct. 252. If a foreign country is selected as the alternative forum, the entire case and all of the parties must be deemed to come within the jurisdiction. *Id.* at 254, 102 S.Ct. 252.

The Supreme Court has concluded certain factors are relevant to making a determination on forum non conveniens grounds, which include private interests affecting convenience of the litigants, along with public interests affecting the convenience of the chosen forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Private interest factors include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 508, 67 S.Ct. 839. Factors of public interest involve administrative difficulties flowing from court congestion; local interest in having localized controversies decided at home; avoidance of unnecessary problems in conflict of laws, or in application of foreign law; unfairness of burdening citizens with jury duty in an unrelated forum; and interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action. *Id.* at 509, 67 S.Ct. 839.

At the outset of a forum non conveniens inquiry, the Court must determine whether there exists an alternative forum. In *Gilbert*, the Court found that this requirement is satisfied when the defendant is "amenable to process" in the other jurisdiction. 330 U.S. at 506–507, 67 S.Ct. 839. Because the parties do not dispute that Cannon is a citizen of Canada, the Court finds that Canada is an appropriate alternative forum.

Next, the Court must weigh the private factors pertaining to the facts of this case. In doing so, the Court agrees with Cannon and C & C that these factors strongly point in favor of Canada as the appropriate forum because Bell's convenience is outweighed by the oppressiveness and vexation to both defendants. All of Cannon's and C & C's sources of proof are in Canada, including their president and employees. USCAN's personnel are also located in Canada and their testimony can only be compelled by Canadian courts. Bell, itself, does business in Canada, yet neither of the defendants do business in Delaware. In

fact, only 1% of the defendants' business is conducted in the United States. A view of the premises of USCAN and Cannon may be helpful, but can only happen in Canada. It would also be less expensive to obtain the testimony of the willing witnesses in Canada than in Delaware.

After analyzing the factors of public interest, the Court again favors the Canadian forum. Since this is a Canadian dispute, conflicts of law would arise if resolved in Delaware. For instance, there is the use of Delaware judicial resources and the burden of jury duty on Delaware citizens, who would have to apply Canadian law. The Court is unfamiliar with Canadian law and may have to rely on experts from Canada, thereby increasing the costs for trial. Also, Canada has an interest in the decision of this controversy, whereas Delaware does not. Dismissal is appropriate here because the Court would be required to "untangle problems in conflict of laws, and in law foreign to itself." *See Gilbert*, 330 U.S. at 509, 67 S.Ct. 839.

Finally, the Court disagrees with Bell's contention that Cannon and C & C must identify the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum. No such requirement exists under the doctrine of forum non conveniens. The Third Circuit affirmed a dismissal on the grounds of forum non conveniens, despite the failure to provide detailed affidavits. *See Dahl v. United Technologies Corp.*, 632 F.2d 1027 (1980).

In sum, the balance of public and private interest factors favors dismissal of the instant case. There is an adequate, alternative forum, Ontario, Canada, that has jurisdiction over the dispute and the parties.

An appropriate Order will be entered.

## ORDER

At Wilmington, this 30th day of September 2002, for the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that Defendant Tom Cannon & Associates LTD.'s Motion to Dismiss for Lack of In Personam Jurisdiction and Defendants' Motion to Dismiss Due to Forum Non Conveniens (D.I.32) is ***GRANTED.***